{¶ 1} Relator, HBD Industries, Inc., has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio, to vacate its order that concluded that respondent-claimant, Thad McCullough, had not reached maximum medical improvement, denied relator's request to terminate claimant's temporary total disability compensation, and authorized claimant's request for surgery.
 {¶ 2} This matter was referred to a magistrate of this court, pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, and recommended that this court deny relator's request for a writ of mandamus. (Attached as Appendix A.) No objections have been filed to that decision.
 {¶ 3} As there have been no objections filed to the magistrate's decision, and it contains no error of law or other defect on its face, based on an independent review of the file, this court adopts the magistrate's decision including the findings of fact and conclusions of law contained in it. Relator's request for a writ of mandamus is denied.
Writ denied.
TYACK and KLATT, JJ., concur.
 IN MANDAMUS {¶ 4} Relator, HBD Industries, Inc., has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission"), to vacate its order which concluded that respondent Thad McCullough ("claimant"), had not reached maximum medical improvement ("MMI"), denied relator's request to terminate claimant's temporary total disability ("TTD") compensation, and authorized claimant's request for surgery.
Findings of Fact:
 {¶ 5} 1. On August 16, 1994, claimant sustained a work-related injury and his claim has been allowed for "lumbosacral sprain; cervical sprain; moderate disc herniation at the L4-5 level; lumbar disc displacement L4-5."
 {¶ 6} 2. At some point, claimant began receiving TTD compensation.
 {¶ 7} 3. On February 6, 2002, relator filed a C-86 motion requesting that claimant's TTD compensation be terminated based upon a finding of MMI. In support of its motion, relator attached the January 16, 2002 report of Dr. Paul C. Martin, who opined as follows:
 {¶ 8} "* * *[I]t is my medical opinion, held to a reasonable degree of medical certainty that Mr. McCollough [sic] has, at this time, reached maximum medical improvement. It is my opinion that despite continuing treatment or rehabilitative measures, Mr. McCollough [sic] will unfortunately, not experience any significant functional or physiologic[al] benefit. It would certainly still be desirable for Mr. McCollough [sic] to lose weight. However, with a target weight of 200 pounds, I don't believe one can realistically expect Mr. McCollough [sic] to achieve such a state based upon the fact he has already attempted a formal weight loss program without any significant weight loss. Unfortunately for Mr. McCollough [sic], it is my opinion no significant degree of weight loss would be a realistic goal in the foreseeable future."
 {¶ 9} Dr. Martin also expressed his opinion concerning claimant's treating physician's opinion that claimant should undergo a second surgical procedure. To that extent, Dr. Martin opined as follows:
 {¶ 10} "* * * Mr. McCollough's [sic] physician of record has now requested additional surgery to consist of a decompression fusion.
 {¶ 11} "I have carefully reviewed Mr. McCollough's [sic] medical records which were quite voluminous, considered the various diagnostic tests and his residual problems and, at this time, am unable to support the requested surgical procedure. It is my opinion Mr. McCollough [sic] presents as an extremely poor candidate for an additional surgery and, as such the risks of such a procedure outweigh the potential benefits. The recommended surgery is a fairly involved procedure and under the best of conditions, still does not have as high a success rate as the procedure which was initially performed in June 2000.
 {¶ 12} "It is my opinion Mr. McCollough [sic] presents as a poor surgical candidate for several reasons. He is a known smoker and it is well-known that individuals who smoke are less successful in experiencing complete fusions and have an increased incidence of failed fusions. Mr. McCollough [sic] is also very obese and is in poor physical condition. It is noted that previous evaluators had recommended he lose weight and improve his physical condition; however, despite being involved in a formal weight loss program, he continues to weigh 300 pounds. There is significant stress being placed on his back from his excessive weight and this has a significant negative effect on any potential benefit which Mr. McCollough [sic] may experience from this surgery. These factors, in conjunction with various other complicating issues known to result in delays in recovery such as the fact he has been off work for several years and his condition being covered under the workers compensation system are well known negative factors which in my opinion minimize any potential benefit from the recommended additional surgical procedure in this case."
 {¶ 13} 4. On February 11, 2002, claimant filed a motion requesting authorization for a second surgical procedure, described by his treating physician as a decompression fusion L3 to the sacrum. Dr. E. B. Marsolais, claimant's treating physician, issued a report dated February 9, 2002. Dr. Marsolais issued the following opinion regarding Dr. Martin's report and the requested surgical procedure:
 {¶ 14} "Both Dr. Martin and I fully agree that Mr. McCollough [sic] is severely disabled by his back. We also agree that his general health is good despite the smoking and obesity. Dr. Martin goes on to opine that since Mr. McCollough [sic] had a 70% chance of a satisfactory result with the initial procedure and only a 50% chance with the requested procedure, he should not have the opportunity to take that 50% chance for improvement. He goes on to state that since the surgery should not be done, Mr. McCollough [sic] is MMI and that NO other recourse is possible for this relatively young and otherwise healthy man.
 {¶ 15} "This reasoning makes absolutely no sense. On 1/25/02 Mr. McCollough [sic] had lost 28 pounds and was continuing to lose. He had agreed to quit smoking at least for the healing time of the fusion. Every one agrees that he has a 100% chance of living out the rest of his life severely disabled if we do nothing. With the fusion we have a 50% chance of a satisfactory result. He should have the opportunity to decide if he wants the surgery. It is not fair to deny him this choice."
 {¶ 16} 5. Both motions were heard before a district hearing officer ("DHO"), who issued an order dated March 21, 2002. Based upon the January 16, 2002 report of Dr. Martin, the DHO concluded that claimant had reach MMI and terminated claimant's TTD compensation. Further, the DHO denied authorization for the requested surgery for the following reasons:
 {¶ 17} "It is the order of the District Hearing Officer that authorization is denied for surgery described as a `spinal stenosis decompression fusion L3 to sacrum' for the reason that this procedure is for conditions not allowed in this claim. As of this date the allowed condition in this claim includes a `moderate disc herniation at the L4-5 level/disc displacement L4-5.' No other levels of the lumbar spin[e] have been allowed as herniations and stenosis of any levels of the lumbar spine has not been allowed.
 {¶ 18} "Accordingly, the claimant's request for the aforesaid surgical procedure is not medically substantiated."
 {¶ 19} 6. On appeal, the matter was heard before a staff hearing officer ("SHO"), who issued an order dated May 8, 2002. The SHO vacated the entire March 21, 2002 DHO order, and issued an order denying relator's motion to terminate claimant's TTD compensation and granting claimant's motion requesting authorization for surgery. The SHO concluded that, pursuant to Dr. Marsolais' February 1, 2002 C-9 report and his February 9, 2002 letter, it was his opinion that the requested surgical procedure is medically necessary and reasonably related to the allowed conditions in claimant's claim. The SHO rejected the report of Dr. Martin and found the reports of Dr. Marsolais to be persuasive as follows:
 {¶ 20} "The Employer's physician, Dr. Martin, in addressing the surgical request, does not address whether it is medically necessary or reasonably related for the treatment of the allowed conditions, but rather, recommends against its approval, as he opines that Claimant, in his medical opinion, is not a good surgical candidate and that this surgery only has about a 50% success rate of improving the allowed conditions. Dr. Martin's opinion is based upon the fact that Claimant is a smoker and deemed to be overweight. However, it is documented in the file that Claimant has participated in a weight loss program and is attempting to quit smoking, and given that Dr. Martin does not specifically state that the requested surgery is not medically necessary or reasonably related for the treatment of the allowed condition, the Staff Hearing Officer finds that Dr. Marsolais' said opinions are more persuasive, and the Staff Hearing Officer relies upon them to conclude that Claimant remains temporarily and totally disabled and that the surgical fusion requested by Dr. Marsolais is medically necessary and reasonably related for the treatment of the allowed conditions, herein. Therefore, authorization for a surgical fusion from L3-Sacrum, as requested, is approved. Costs for said surgery shall be limited to `usual, customary and reasonable' Guidelines, and will therefore be deemed reasonable.
 {¶ 21} "Temporary total compensation is ordered reinstated and paid from 03/21/02, and to continue upon submission of medical evidence of temporary total disability independently due to the allowed conditions, herein."
 {¶ 22} 7. Relator's appeal was refused by order of the commission mailed May 29, 2002.
 {¶ 23} 8. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 24} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987),29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 25} Relator contends that the commission has abused its discretion by authorizing surgery for nonallowed conditions. Specifically, relator points out that claimant's claim has been allowed for "lumbosacral sprain; cervical sprain; moderate disc herniation at the L4-5 level; lumbar disc displacement L4-5." However, relator notes that the surgical procedure involved is described as a decompression fusion L3 to the sacrum. Relator contends that this surgery is for a nonallowed condition.
 {¶ 26} Relator cites State ex rel. Griffith v. Indus. Comm. (1999), 87 Ohio St.3d 154, in support of its argument. In Griffith, the claimant requested surgery for degenerative arthritis, which was clearly a nonallowed condition in the claimant's claim. The claim had been allowed for "contusion left knee" and "internal derangement/tear medial meniscus left knee." Relator had argued that, so long as the surgery was for the same body part which was allowed in the claim, any subsequent condition related to that body part would be likewise compensable. The Supreme Court of Ohio specifically disagreed.
 {¶ 27} In the present case, relator contends that the requested surgery is for spinal stenosis and not for the allowed conditions in the claim. However, the commission relied upon the report of Dr. Marsolais, who opined that the requested surgery had a 50 percent chance of improving claimant's condition. The commission concluded that that medical statement provided a basis upon which to authorize the requested surgery for the allowed conditions.
 {¶ 28} This court can take judicial notice of the fact that the L3 level is directly above the L4 level. Claimant's claim is allowed for moderate disc herniation at the L4-5 level and lumbar disc displacement at the L4-5 level. The commission relied upon the report of Dr. Marsolais who indicated that by fusing the L3 to the L4-5, claimant had a 50 percent chance of having an improvement in his allowed condition.
 {¶ 29} Upon review, this magistrate concludes that the report of Dr. Marsolais is some evidence upon which the commission could rely in finding that the requested surgery was for the allowed conditions in the claim and that the claimant's doctor, to a reasonable degree of medical certainty, was of the opinion that the surgical procedure would benefit claimant and improve his allowed condition. Contrary to relator's argument, the report of Dr. Marsolais does not indicate that the surgery is for a nonallowed condition.
 {¶ 30} Based on the foregoing, it is this magistrate's decision that this court should deny relator's request for a writ of mandamus.